THOMPSON & KNIGHT LLP
900 Third Avenue, 20th Floor
New York, New York 10022-4728
(212) 751-3001
Stuart Glick
Anthony F. Pirraglia

**HEARING DATE:  OCTOBER 26, 2017**
**HEARING TIME:  10:00 AM**

*Counsel for Citibank, N.A.*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

In re:                                                  :          Chapter 11
                                                        :
NOSSON R. SKLAR,                                        :          Case No. 17-12394 (SCC)
                                                        :
                              Debtor.                   :
                                                        :
------------------------------------------------------------X

## <u>NOTICE OF MOTION</u>

   **PLEASE TAKE NOTICE** that upon this *Notice of Motion* and the accompanying *Citibank, N.A.'s Motion for Entry of an Order Dismissing the Debtor's Chapter 11 Case or in the Alternative Granting Relief from the Automatic Stay* and the *Declaration of Stuart J. Glick, Esq. in Support of Citibank, N.A.'s Motion for Entry of an Order Dismissing the Debtor's Chapter 11 Case or in the Alternative Granting Relief from the Automatic Stay*, Citibank, N.A. ("<u>Citibank</u>") will move this Court before the Honorable Shelley C. Chapman, Bankruptcy Judge, in the United States Bankruptcy Court, One Bowling Green, Room 623, New York, New York 10601 on **<u>October 26, 2017 at 10:00  a.m.</u>**, or as soon thereafter as counsel can be heard, for an order dismissing this Chapter 11 case or, in the alternative, granting relief from the automatic stay, and for any such other and further relief as this Court may deem just and proper.   The original motion is on file with the Clerk of the Bankruptcy Court.

**PLEASE TAKE FURTHER NOTICE** that any responsive papers should be filed with the Court and personally served on the counsel to Citibank, **THOMPSON & KNIGHT LLP, 900 Third Avenue, 20th Floor, New York, New York 10022-4728, Attn: Stuart Glick and Anthony Pirraglia**, no later than seven (7) days prior to the return date set forth above.  Such papers shall conform to the Federal Rules of  Civil Procedure and identify the party on whose behalf the papers are submitted, the nature of the response, and the basis for such response.

DATED:   New York, New York
September 29, 2017

Respectfully submitted,

THOMPSON & KNIGHT LLP
*Counsel to Citibank, N.A.*

By:
/s/ Anthony F. Pirraglia
STUART GLICK
ANTHONY F. PIRRAGLIA
900 Third Avenue, 20th Floor
New York, New York  10022-4728
(212) 751-3001

THOMPSON & KNIGHT LLP
900 Third Avenue, 20th Floor
New York, New York 10022-4728
(212) 751-3001
Stuart Glick
Anthony F. Pirraglia

*Counsel for Citibank, N.A.*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------X
                                            :
In re:                                      :        Chapter 11
                                            :
NOSSON R. SKLAR,                            :        Case No. 17-12394 (SCC)
                                            :
                          Debtor.           :
                                            :
-------------------------------------------------------------X

## CITIBANK'S MOTION FOR ENTRY OF AN ORDER DISMISSING THE DEBTOR'S CHAPTER 11 CASE OR IN THE ALTERNATIVE GRANTING RELIEF FROM THE AUTOMATIC STAY

TO THE HONORABLE SHELLEY C. CHAPMAN,
UNITED STATES BANKRUPTCY JUDGE:

Citibank, N.A. ("Citibank"), by and through its counsel, Thompson & Knight LLP, hereby moves (the "Motion") for entry of an order (i) dismissing with prejudice the chapter 11 case of the above-captioned debtor, Nosson R. Sklar a/k/a Nathan Sklar (the "Debtor"), for cause as a "bad faith filing" pursuant to section 1112(b) of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code") and in the interests of creditors and the Debtor pursuant to section 305(a) of the Bankruptcy Code, or (ii) in the alternative, for relief from the automatic stay pursuant to section 362(d) of the Bankruptcy Code.  In support of this Motion, Citibank respectfully submits the Declaration of Stuart Glick, Esq., dated September 29, 2017 (the "Glick Declaration") and the exhibits annexed thereto and represents as follows:

1

031352 000049 19870616.9

## PRELIMINARY STATEMENT

1.      In February 2016, Citibank obtained a judgment for $1,618,007.76 against the Debtor, subsequently, secured by all of Debtor's real and personal property pursuant to a settlement memorialized by a consent order entered in the District Court for the Southern District of New York (the "District Court"), which was secured by UCC-1 financing statement recorded pursuant thereto.

2.      The Debtor has engaged in an eighteen (18) month effort to stymie Citibank's collection efforts. The Debtor has disregarded multiple information subpoenas and demands for documents and information in violation of no less than five District Court orders. As a result, the Debtor has been twice held in contempt and, in April 2017, the District Court appointed a Receiver (defined below) to investigate and monetize his assets for the benefit of Citibank (and other creditors).

3.      The Debtor's primary asset is real estate located in the building at 264 East Broadway, New York, New York. There, the Debtor owns three cooperative apartments (more fully defined below as the Coops), worth not more than $2,500,000, which are pledged to secure more than $4,300,000 in defaulted debt. In the weeks leading up to the filing of this case, the Receiver was proceeding to market and sell the Coops, retaining a real estate broker on August 18, 2017.

4.      The Debtor has obstructed every effort of the Receiver, at every turn. By way of example, the Debtor refused to provide the Receiver with a single document concerning the Coops, refused to provide contact information for the cooperative board and refused to allow the Receiver to enter the Coops. The Receiver only obtained access to the Coops pursuant to a

031352 000049 19870616.9

District Court order that provided for the retention of a locksmith.  The filing of this case must be viewed for what it is – the culmination of an ongoing effort to impede the sales process.

5.    The bankruptcy filing does nothing more than subject Citibank to irreparable harm while the value of its collateral continues to deteriorate as a result of interest and other expenses negotiated with prior liens on the Coops that remain unpaid.  According to the Debtor's Schedules and Statement of Financial Affairs, the Debtor has no unencumbered assets and gross income of $6,000 in each of the two years preceding this case.  The Debtor defaulted on the first lien on the Coops, which resulted in the first lienholder scheduling an auction on August 31, 2017.  The Debtor has not paid maintenance fees and other expenses relating to the Coops since June 2016, which resulted in service of an eviction notice on the Debtor, with liens continuing to grow to the detriment of Citibank's junior lien.  The Debtor simply does not generate enough revenue to make payments on the Coops, such that a feasible plan of reorganization (or rehabilitation) is an impossibility.

6.    The Debtor's bad faith in filing this case is apparent from the face of the pleadings and the facts and circumstances surrounding the filing.  To wit, the Debtor's pattern of obstructionism and non-disclosure continue today:  the Debtor does not disclose the appointment of the Receiver or the existence of approximately $250,000 in additional assets encumbered by Citibank's security interest (*see* Dkt. No. 11, Statement of Financial Affairs at No. 12; Dkt. No. 11, Schedule A/B at No. 32).  The Debtor ignores that Citibank is a secured creditor (*see, e.g.*, Dkt. No. 1, Form B104 (identifying Citibank as an unsecured creditor)).

7.    The Debtor's bad faith is palpable, which is both "cause" for dismissal under section 1112(b) and "cause" for relief from the automatic stay.  Accordingly, the case should be dismissed or the stay vacated as to the Receiver.

031352 000049 19870616.9

## JURISDICTION

8.      This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157(b) and

1334.  The Motion is a core matter within the meaning of 28 U.S.C. § 157(b)(2).

9.      Venue of this Motion in this Court is proper pursuant to 28 U.S.C. § 1409.

10.     The statutory predicates for the relief requested herein are sections 305(a), 349(a),

362(d) and 1112(b) of the Bankruptcy Code and related Federal Rules of Bankruptcy Procedure

(the "Bankruptcy Rules").

## RELEVANT BACKGROUND

11.     As further described below, Citibank is secured creditor of the Debtor pursuant to

settlement memorialized in a Consent Order (as defined below) entered in a District Court action

commenced in September 2015.[1]

A.      Citibank's Collection Efforts

12.     On or about February 14, 2013, Sklar, as member of The Comprehensive Center,

LLC ("TCC"), executed a letter agreement (the "Letter Agreement"), by which Citibank

approved TCC's request for a relationship ready line of credit (the "RLC") in the amount of

$1,500,000.  (Glick Decl. Ex. A (Verified Complaint ¶ 8 and Exhibit A thereto)).

13.     The RLC was expressly made subject to the terms and conditions set forth in that

certain Credit Terms and Conditions Disclosure Booklet (the "Disclosure Booklet," together with

---

[1]      The Debtor incorrectly identifies Citibank as an unsecured creditor holding an undisputed claim in the amount of $1,000,000. [Dkt. No. 1, Form B104].

the Letter Agreement, the "Loan Documents").  (Glick Decl. Ex. A (Verified Complaint ¶ 9 and

Exhibit B thereto).).[2]

14.    Sklar guaranteed TCC's obligations under the Loan Documents individually and

on behalf of Comprehensive Staffing Solutions LLC ("CSS").[3]  (Glick Decl. Ex. A (Verified

Complaint ¶¶ 10-11 and Exhibit A thereto).)

15.    As of April 1, 2014, TCC had drawn down the full amount of the RLC.  (Glick

Decl. Ex. A (Verified Complaint ¶ 15).)

16.    On or about April 8, 2014, Sklar, executed a second letter agreement (the "Second

Letter Agreement," hereinafter included in the previously defined term, "Loan Documents").

(Glick Decl. Ex. A (Verified Complaint ¶ 17 and Exhibit C thereto).)

17.    Subsequently, TCC defaulted under the terms of the Loan Documents.  Citibank

provided notice of default and accelerated the amount due and owing under the Loan Documents

by letter dated June 30, 2015.  (Glick Decl. Ex. A (Verified Complaint ¶¶ 22-23 and Exhibit D

thereto).)

18.    On or about September 8, 2015, Citibank commenced an action in the District

Court, Case No. 15-cv-07060 (S.D.N.Y.) (the "District Court Action"), against TCC, CSS and

Sklar (collectively, the "Defendants"). (Glick Decl. Ex. A.)

---

[2]    Pursuant to the Loan Documents, TCC granted Citibank a first priority security interest in all of its personalty,
among other things, as defined therein, to secure the repayment of any and all obligations it owed, as of then
and in the future, to Citibank.  Citibank perfected the security interest upon the filing of a financing statement
with the appropriate governmental authority on February 22, 2013.

[3]    CSS and TCC are under the control of Sklar.

19.    On February 11, 2016, the District Court entered a judgment in favor of Citibank against Defendants in the amount of $1,618,007.76 [District Court Action Dkt. No. 49]. (Glick Decl. Ex. B.)

20.    Thereafter, Sklar repeatedly refused to make available the Defendants' books and records and ignored numerous information subpoenas.  As a result, the Defendants were twice held in contempt.  *See Order for Contempt and Sanctions*, dated April 1, 2016 [District Court Action Dkt. No. 57] (Glick Decl. Ex. C);  *Order for Further Contempt and Sanctions*, dated June 22, 2016 [District Court Action Dkt. No. 77] (Glick Decl. Ex. D).  Notwithstanding, Sklar continued to refuse to comply with the orders of the District Court.

21.    On August 18, 2016, the District Court entered the *Order on Plaintiff's Motion for Arrest and Incarceration of Defendant Nathan Sklar and For Related Relief* [District Court Action Dkt. No. 89]. (Glick Decl. Ex. E.)

22.    Sklar, facing arrest, made available the Defendants' books and records and sat for deposition with counsel for Citibank.

23.    As a result, Citibank determined that Sklar's assets are comprised of (i) approximately $250,000 in proceeds from the sale of his late mother's estate (the "Cash"),[4] and (ii) three cooperative apartments subsequently consolidated into one unit (the "Coops") evidenced by shares of Seward Park Housing Corporation allocated to units C201, C202, C207 in the building at 264 East Broadway, New York, New York (the "Shares") and the related proprietary leases (the "Proprietary Leases").  (*See*, *e.g.*, Glick Decl. Ex. F (Transcript of

---

[4]    Sklar failed to disclose his interest in the Cash to this Court. (*See* Dkt. No. 11, Schedule A/B at No. 32.)

031352 000049 19870616.9

Deposition of Nathan Sklar on September 26, 2016) at 178:4-15.)  Citibank further determined

that CSS, TCC and various other entities in which Sklar holds equity are not operating and have

no assets.  (*Id.* at 179:13-180:11, 188:16-20.)

24.    On September 28, 2016, Citibank and the Defendants reached a settlement, and

on October 11, 2016, the District Court entered a consent order memorializing same [District

Court Action Dkt. No. 95] (the "Consent Order").  (Glick Decl. Ex. G.)  The Consent Order

provided, among other things, that:

(1) "On or before January 1, 2017, Defendants shall pay $250,000 to Citibank;"

(2) "Sklar shall execute all documents reasonably requested by Citibank to provide Citibank with a lien and security interest on the Coops and an assignment of his lease associated with the Coops;"

(3) "Sklar shall use his best efforts to refinance the cooperative units that he owns . . . and shall cause such sum to be paid to Citibank for application of the amount due and owing under the Judgment;" and

(4) "[b]eginning on February 1, 2017, and on the first day of every month thereafter, through December 1, 2017 . . . Sklar shall pay $40,000 to Citibank by certified check or wire transfer . . . ."

(Glick Decl. Ex. G ¶¶ 2, 5 & 9).

25.    The Consent Order further provided that:

Upon any failure by Defendants to timely and fully cure any breach of which notice has been  provided pursuant to the preceding paragraph, then (a) the full remaining amount of the Judgment, plus all accrued interest, shall be immediately due, owing and payable by Defendants to Citibank; (b) Defendants forfeit any right to a reduction in the balance of the Judgment by $100,000 . . .; (c) Sklar shall immediately list the Coops for sale with a licensed real estate broker under the laws of the State of New York, which broker shall be acceptable to Citibank in its reasonable discretion, and Sklar shall accept any bona fide offer to purchase such Coops in amount equal to or greater than such licensed real estate broker's written opinion of value, which such licensed real estate broker shall provide to Sklar within 10 business days of such licensed real estate broker's engagement.

(Glick Decl. Ex. G ¶ 15.)

26.     On or about November 1, 2016, Citibank recorded its security interests against Sklar.  (Glick Decl. Ex. H (UCC Financing Statement on any and all personal property, recorded on November 3, 2016); Glick Decl. Ex. I (UCC Financing Statement on cooperative units, recorded on November 7, 2016).)

27.     Sklar promptly defaulted under the Consent Order by (i) refusing to execute a pledge and security agreement and assignment of the Proprietary Leases or provide the Shares to Citibank; (ii) failing to provide evidence of efforts to refinance the Coops; and (iii) failing to make any payments to Citibank.  After receiving notice of default, Sklar failed to retain a real estate broker, or provide Citibank with a list of potential brokers, to sell the Coops, as required under the Consent Order.

28.     On March 7, 2017, Citibank filed a motion for entry of an order to enforce and compel Defendants to comply with the Consent Order [District Court Action Dkt. No. 98]. (Glick Decl. Ex. J.)

29.     On March 16, the District Court entered the *Order Enforcing October 11, 2016 Consent Order and Providing Other Relief* [District Court Action Dkt. No. 102], which required Sklar to, among other things, provide Citibank with a list of no less than five real estate brokers to market the Coops for sale. (Glick Decl. Ex. K.)

30.     Again, Sklar refused to comply with the Orders of the District Court.

31.     On April 10, 2017, Citibank filed a motion to appoint a receiver [District Court Action Dkt. No. 104]. (Glick Decl. Ex. L.)

32.     On April 21, 2017, the District Court entered the *Order Appointing Post-Judgment Receiver and Providing Related Relief* [District Court Action Dkt. No. 108] (the

8

"Receiver Order") (Glick Decl. Ex. M), which, *inter alia*, appointed Ian Lagowitz as receiver (the "Receiver") to: (i) market and sell the Coops; (ii) collect whatever proceeds are due and owing to Sklar from the estate of Sklar's late mother; and (iii) collect, administer and sell the real or personal property of one or more of Defendants.  The Receiver Order also required Sklar to cooperate with the Receiver in connection with the marketing and sale of the Coops and "provide to the Receiver all information and documentation that he requests."  (*Id*. ¶ 14).

33.    Sklar refused to provide the Receiver with the information and documents necessary to market the Coops, including (i) the Proprietary Leases, (ii) documents reflecting the rules and regulation of the Coops, (iii) utility bills and/or invoices relating to the Coops, (iv) entry information for the Coops, including keys and passcodes, (v) any applicable insurance policies, (vi) cooperative board identification and contact information, and (vii) contact information for the building superintendent(s).

34.    On May 5, 2017, Citibank filed a motion to enforce the Receiver Order [District Court Action Dkt. No. 109].  (Glick Decl. Ex. N.)

35.    On May 12, 2017, the District Court entered the *Order Enforcing Receiver's Order and Providing Other Relief* [District Court Action Dkt. No. 114], authorizing the Receiver to, among other things, change the locks and take reasonable actions to be in a position to market the Coops. (Glick Decl. Ex. O.)

36.    On July 14, 2017, the District Court entered a writ of execution against Sklar. (Glick Decl. Ex. P (Writ of Execution).)

031352 000049 19870616.9

B.    The Debtor's Other Secured Creditors

37.    The Coops are subject to a first priority lien held by Consumers Federal Credit Union ("CFCU") on the Petition Date, which arose in connection with a Loan Security Agreement and Promissory Note dated December 30, 2013, between Sklar and CFCU (the "CFCU Loan").  Upon information and belief, the outstanding balance under the CFCU Loan is approximately $1,098,430.93.[5]

38.    Sklar is in default on the CFCU Loan, and on July 21, 2017, CFCU provided notice that an auction (the "Auction") of the Coops would occur on August 31, 2017.  (Glick Decl. Ex. Q (Notice of Auction).)

39.    The Coops are also subject to a security interest held by the cooperate association, Seward Park Housing Corporation ("SPHC"), that owns the building where the Coops are located.  Since June 2016, Sklar has failed to pay maintenance, cap assessments, electrical and gym fees, and other sums (collectively, "Maintenance") owed to SPHC on account of the Coops. Prior to the Petition Date, Sklar owed $39,962.32 on account of unpaid Maintenance, which continues to accrue at a rate of approximately $3,700.00 per month.  As of September 1, 2017, Sklar owed $43,686.66 on account of unpaid Maintenance. [6]

40.    Upon information and belief, SPHC pursued and obtained warrants for the eviction of Sklar from the Coops.

---

[5]    The Debtor attributes the CFCU Loan to Sixth Avenue Credit Union [Dkt. No. 11, Schedule D at No. 2.4].

[6]    The aggregate amount of maintenance due as of August 1, 2017 is broken down as follows: (i) $13,491.52 on Unit C201; (ii) $10,540.35 on Unit C202; and (iii) $15,930.45 on Unit C207. (Glick Decl. Ex. R1 – R3 (Tenant Ledgers).)  The aggregate amount of maintenance due as of September 1, 2017 is broken down as follows: (i) $14,720.97 on Unit C201; (ii) $11,618.63 on Unit C202; and (iii) $17,347.06 on Unit C207.  (*Id*.)  The Debtor schedules the debt to SPHC as a secured, disputed debt [Dkt. No. 11, Schedule D at No. 2.1].

41.    In addition, the Coops are subject to liens held by Itria Ventures LLC ("Itria") on account of various judgments.[7]

42.    Citibank and Itria executed an Inter-Creditor Agreement, effective August 4, 2017, which governs the distribution of proceeds from the sale of the Coops and provides for the satisfaction of priority liens or encumbrances, the Receiver's fees and closing costs associated with the sale of the Coops. Additionally, Itria engaged CFCU regarding the potential purchase of the CFCU Loan to facilitate a sale by the Receiver (and stop the Auction).[8]

C.    Events Preceding the Bankruptcy Filing

43.    On August 18, 2017, the Receiver employed Brown Harris Stevens Residential Sales, LLC as a real estate broker to sell the Coops.

D.    Bankruptcy Proceeding

44.    On August 29, 2017 (the "Petition Date"), two days before the Auction was scheduled to occur, the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

---

[7]    Itria obtained three judgments against Sklar totaling $1,685,147.89, plus post-judgment interest: (i) a judgment entered against, among others, Sklar, on March 28, 2017, in the total amount of $245,114.88, plus post-judgment interest in accordance with NYCPLR 5004 thereafter, in the Supreme Court of New York, County of New York, Index No. 651609/17; (ii) a judgment entered against, among others, Sklar, on May 24, 2017, in the total amount of $1,377.855.06, plus post-judgment interest in accordance with NYCPLR 5004 thereafter, in the Supreme Court of New York, County of New York, Index No. 652817/17; and (iii) a judgment entered against, among others, Sklar, on July 14, 2017, in the total amount of $62,452.95, plus post-judgment interest in accordance with NYCPLR 5004 thereafter, in the Supreme Court of New York, County of Richmond, Index No. 17-151451. (Glick Decl. Exs. S, T and U.) The Debtor schedules the Itria obligations as an undisputed $1,000,000 secured claim [Dkt. No. 11, Schedule D at No. 2.1].

[8]    On or about August 31, 2017, Itria completed the purchase of the CFCU Loan. (Glick Decl. Ex. V.)

031352 000049 19870616.9

45.     On September 11, 2017, the Debtor filed his Schedules and Statement of Financial Affairs [Dkt. No. 11].

46.     The Debtor disclosed assets comprised of (i) his interest in the Coops, to which he attributes a value of $2,000,000.00,[9] and (ii) furniture in the Coops, to which he attributes a value of $2,500.00 [Dkt. No. 11, Schedule A/B].  The Debtor reports a monthly income of $500.00 and monthly expenses totaling $11,016.00 [Dkt. No. 11, Schedule J].

## ARGUMENT

47.     Citibank respectfully requests entry of an order pursuant to sections 1112(b) and/or 305(a)(1) of the Bankruptcy Code dismissing the Debtor's chapter 11 case for cause and/or in the interest of the Debtor and its creditors.  Citibank further requests that such dismissal be with prejudice pursuant to section 349(a) of the Bankruptcy Code.  In the alternative, Citibank seeks relief from the automatic stay under sections 362(d)(1) or (d)(2) of the Bankruptcy Code to allow the Receiver to continue to fulfill his obligations, including efforts to sell the Coops, under the Receiver Order.

## I.      The Debtor's Chapter 11 Case Should Be Dismissed Pursuant to Section 1112(b) or Section 305(a) of the Bankruptcy Code

48.     Section 1112(b) of the Bankruptcy Code, provides, in relevant part, that:

On request of a party in interest, and after notice and a hearing, absent unusual circumstances specifically identified by the court that establish that the requested . . . dismissal is not in the best interests of creditors and the estate, the court shall . . . dismiss a case under this chapter . . . if the movant establishes cause.

---

[9]     Citibank believes the value of the Coops is not more than $2,500,000.00.  (Glick Decl. Ex. W (Opinion of Value).)

031352 000049 19870616.9

11 U.S.C. § 1112(b)(1).

49.     It is well-settled that one form of cause for dismissal under section 1112(b) is that the debtor filed the case in bad faith or that the case demonstrates attributes of bad faith.  *See In re C-TC9th Ave. P'ship v. Norton Co. (In re C-TC 9th Ave. P'ship)*, 113 F.3d 1304, 1310-11 (2d Cir. 1997); *see also Baker v. Lathan Sparrowbush Assoc. (In re Cohoes Indus. Terminal, Inc.)*, 931 F.2d 222, 227-28 (2d Cir. 1991); *Official Comm. of Unsecured Creditors v. Nucor Corp. (In re SGL Carbon Corp.)*, 200 F.3d 154, 160-61 (3d Cir. 1999).

50.     The Second Circuit has found the following eight factors to be indicative of a bad faith filing:

> (1) the debtor has only one asset; (2) the debtor has few unsecured creditors whose claims are small in relation to those of the secured creditors; (3) the debtor's one asset is the subject of a foreclosure action as a result of arrearages or default on the debt; (4) the debtor's financial condition is, in essence, a two party dispute between the debtor and secured creditors which can be resolved in the pending state foreclosure action; (5) the timing of the debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the debtor's secured creditors to enforce their rights; (6) the debtor has little or no cash flow; (7) the debtor can't meet current expenses including the payment of personal property and real estate taxes; and (8) the debtor has no employees.

*See In re C-TC*, 113 F.3d at 1311; *In re Kaplan Breslaw Ash, LLC*, 264 B.R. 309, 334-35 (Bankr. S.D.N.Y. 2001).

51.     Here, the majority of relevant bad faith factors are present:[10]

- **The Debtor's only assets are the subject of the District Court Action.**  The Debtor's estate is comprised of the Coops (and undisclosed Cash).  Pursuant to the Receiver Order, the Coops are on the verge of being sold (and the Receiver is entitled to collect the Cash).  The pendency of the District Court Action is indicia of a bad faith filing. *See In re C-TC*,

---

[10] The Debtor is an individual with no employees.

113 F.3d at 1312 (finding bad faith where the debtor's only asset was the subject of a foreclosure action brought as a result of a default in the underlying mortgage).

- **The timing of the Debtor's filing evidences an intent to delay.**  The Debtor chose to file his bankruptcy petition to delay and frustrate secured creditors' legitimate efforts to foreclose on the Coops, as well as to delay and frustrate the Receiver from carrying out the mandates of the District Court's order regarding the Coops, in which Debtor has no equity.  The Debtor has engaged in a pattern of conduct designed to prevent Citibank and the Receiver from foreclosing on the Coops.  This is further indicia of bad faith.  *See id.*

- **The Debtor has little or no cash flow.**  The Debtor has monthly income of $500.00 and no prospects of increased cash flow. [Dkt. No. 11, Schedule I]. This is further indicia of bad faith.  *See Pleasant Pointe*, 139 B.R. at 832 (holding that the debtor having little or no cash flow is indicia of bad faith).

- **The Debtor cannot meet current expenses.**  The Debtor's income precludes his ability to meet expenses.  As explained above, the Debtor has not even paid Maintenance for the Coops since June 2016.  The Debtor cannot service the CFCU Loan.  The Debtor's abandonment of his responsibility to preserve the Coops is indicia of bad faith. *See In re C-TC*, 113 F.3d at 1312 (holding that debtor's failure to pay expenses on its assets evidences a bad faith filing).

52.      Thus, the majority of the Second Circuit's relevant indicia for a bad faith filing are present in this case.  At bottom, the Debtor has consistently disregarded the Orders of the District Court in an effort to preclude Citibank's collection efforts and to prevent a sale of the Coops.  Accordingly, Citibank respectfully submits that the Debtor's chapter 11 case must be dismissed pursuant to section 1112(b) of the Bankruptcy Code for cause as a bad faith filing.  *See generally In re Little Creek Dev. Co.*, 779 F.2d 1068, 1072 (5th Cir. 1986) ("A good faith standard protects the jurisdictional integrity of the bankruptcy courts by rendering their powerful equitable weapons . . . available only to those debtors and creditors with 'clean hands.'")

53.      Alternatively, the Court may dismiss the chapter 11 case upon a finding that "the interests of creditors and the debtor would be better served by such dismissal."  11 U.S.C. § 305(a)(1).  The Debtor has no unencumbered assets, no income or prospects for reorganization (or rehabilitation) and a court-appointed custodian, the Receiver, is in a position to maximize

14

value for the benefit of the Debtor's secured creditors.   The continuation of this case for the benefit of the Debtor, who spent more than a year disregarding Orders of the District Court in an effort to conceal assets, is inappropriate and counterproductive where the Receiver has been appointed.   A bankruptcy proceeding merely represents a layer of costs that would reduce the recovery of creditors.   Thus, the interest of the parties would be best served by dismissal.

**II.        In the Alternative, Citibank Should be Granted Relief from the
Automatic Stay Pursuant to Section 362 of the Bankruptcy Code**

54.        If the Court is not inclined to dismiss this chapter 11 case, the automatic stay should be modified under sections 362(d)(1) or (d)(2) of the Bankruptcy Code to allow the Receiver to act in accordance with the Receiver Order.

A.        Relief is Warranted Under Section 362(d)(1) of the Bankruptcy Code

55.        Section 362(d)(1) of the Bankruptcy Code provides the Court shall grant relief from the automatic stay "for cause, including the lack of adequate protection of an interest in property of such party in interest."   11 U.S.C. § 362(d)(1).   The Debtor bears the burden of proving that cause does not exist to lift the automatic stay.   *See* 11 U.S.C. § 362(g)(2).

56.        As discussed above, the filing of the petition with the intent to frustrate Citibank's legitimate efforts to foreclose on the Coops constitutes bad faith. The same factors which establish "cause" for a bad faith dismissal also establish "cause" to lift the automatic stay. *In re Sonnax Indust.*, 907 F.2d 1280, 1286 (2d Cir. 1990); *Little Creek*, 779 F.2d at 1072; *Phoenix Piccadilly*, 849 F.2d at 1394; *Manhattan King David Restaurant, Inc. v. Levine*, 163 B.R. 36, 40 (S.D.N.Y. 1993).   The Court can (and should) lift the stay by reason of the Debtor's bad faith even if the Court has concluded that the Debtor's bad faith is insufficient to dismiss the case

15

altogether. *In re Dixie Broadcasting, Inc.*, 871 F.2d 1023, 1029 (11th Cir. 1989); *see also Manhattan King David Restaurant*, 163 B.R. at 36.

57. Furthermore, section 362(d)(1) requires modification of the automatic stay if a debtor cannot provide a secured creditor with adequate protection of its collateral. Thus, the Debtor's inability to provide adequate protection constitutes an independent ground for stay relief. *See United States Savings Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 370 (1988) (recognizing secured creditor's interest not adequately protected if security is depreciating during term of stay); *Hamilton v. Lomas Mortgage U.S.A. (In re Hamilton)*, 100 B.R. 385, 388 (N.D. Ill. 1989) (affirming decision finding that secured creditor does not have sufficient assurance that value of secured interest would be protected where equity cushion steadily eroded).

58. Where a movant establishes a *prima facie* case that the value of the collateral is declining, "the burden shifts to the debtor to go forward with evidence, and ultimately, to prove that the collateral is not declining in value, or that the secured party is adequately protected through periodic payments, an equity cushion, additional or replacement liens or good prospects for a successful reorganization." *In re Elmira Litho.*, 174 B.R. 892, 902 (Bankr. S.D.N.Y. 1994).

59. Here, the value of the Coops is deteriorating every day: the Debtor is unable to service the CFCU Loan; the Debtor has been unable to pay Maintenance since June 2016 and such expenses continue to accrue post-petition. By way of example, Maintenance must be paid before Citibank and in connection with any sale of the Coops. Accordingly, the value of the Coops decreases as Maintenance accrues on a dollar-for-dollar basis. Thus, the failure to pay Maintenance alone has resulted in a diminution of value in the Coops. *See In re Armenakis*, 406

B.R. 589, 620-21 (Bankr. S.D.N.Y. 2009) (finding post-petition accrual of maintenance sufficient to establish a primae facie case for stay relief under section 362(d)(1)).

60.     Courts routinely grant relief from the automatic stay where the movant demonstrates a post-petition reduction in the value of the collateral.  *See, e.g.*, *In re Armenakis*, 406 B.R. at 620-21 (granting relief from stay in favor of creditor); *In re Domestic Fuel Corp.*, 70 B.R. 455, 463 (Bankr. S.D.N.Y. 1987) (granting relief from automatic stay under section 362(d)(1)).

61.     Here, the Debtor cannot satisfy his burden to show that the Coops are not declining in value.  Nor can the Debtor credibly argue that Citibank is adequately protected. Accordingly, Citibank should be granted relief from the automatic stay for cause under section 362(d)(1) of the Bankruptcy Code.

B.     Relief is Warranted Under Section 362(d)(2) of the Bankruptcy Code

62.     Stay relief is also mandated under section 362(d)(2) of the Bankruptcy Code. Pursuant to section 362(d)(2), the Court must grant relief from the automatic stay "[i]f (A) the debtor does not have an equity in such property; and (B) such property is not necessary to an effective reorganization." 11  U.S.C. § 362(d)(2).

63.     Here, the Debtor has no equity in the Coops.  SPHC's claim exceeds $43,686.66, Citibank's secured claim exceeds $1,618,007.76, Itria's secured claims exceed $1,685,147.89 and CFCU's secured claim (now owned by Itria) exceeds $1,010,395.02.  These secured claims aggregate to more than $4,357,237.33.  By contrast, the Debtor attributes a value of $2,000,000

031352 000049 19870616.9

to the Coops.  (Citibank believes the Coops are worth not more than $2,500,000.)  Thus, the

Debtor has no equity in the Coops, even by his own admission.[11]

64.    In opposing a motion to lift the stay under section 362(d)(2), the Debtor has the

burden of showing "not merely . . . that if there is conceivably to be an effective reorganization,

this property will be needed for it; but that the property is essential for an effective

reorganization that is in prospect. This means . . . that there must be 'a reasonable possibility of a

successful reorganization within a reasonable time.'"  *Timbers of Inwood*, 484 U.S. at 375-76; 11

U.S.C. § 362(g); *see also La Jolla Mortgage Fund v. Rancho El Cajon Assocs.*, 18 B.R. 283, 291

(Bankr. S.D. Cal. 1982) (granting relief from stay where debtor failed to present evidence that

reorganization was likely and that property was necessary to the reorganization).

65.    "An 'effective' reorganization means more than just that the debtor needs the

property." *In re Boca Development Assocs.*, 21 B.R. 624, 630 (Bankr. S.D.N.Y. 1982) (allowing

foreclosure action to proceed where property was not necessary for effective reorganization

because debtor had no equity in property and there was no proof financing would be available).

Rather, the Debtor must show that the Coops are "essential for an effective reorganization that is

in prospect" and that there is a reasonable possibility of a "successful reorganization within a

reasonable time." *Timbers of Inwood*, 484 U.S. at 376; *In re Pegasus Agency, Inc.*, 101 F.3d

882, 886 (2d Cir. 1996) (affirming order finding stay relief was proper where debtor did not

show reorganization was possible); *In re Kent Terminal Corp.*, 166 B.R. 555, 562 (Bankr.

S.D.N.Y. 1994) ("[A]n effective reorganization cannot be based solely on speculation."). "[T]he

---

[11]    On Schedule D, the Debtor identifies $2,040,000 of claims secured against the Coops.  [Dkt. No. 11, Schedule D].

031352 000049 19870616.9

debtor must show that an effective reorganization is realistically possible . . . .  The mere fact that the property is indispensable to the Debtor's survival is insufficient." *In re Bellina's Restaurants II, Inc.*, 52 B.R. 509, 512 (Bankr. S.D. Fla. 1985).

66.    The Supreme Court has recognized that "lack of any realistic prospect of effective reorganization will require § 362(d)(2) relief." *Timbers of Inwood*, 484 U.S. at 376.  Here, the Debtor has absolutely no realistic prospect of an effective reorganization, and stay relief is mandated.

## <u>NOTICE</u>

67.    Citibank has served a copy of this Motion upon the Debtor and other creditors and parties-in-interest in accordance with the Bankruptcy Rules.

## <u>CONCLUSION</u>

WHEREFORE, for all of the foregoing reasons, Citibank respectfully requests that the Court enter (i) an order, substantially in the form annexed hereto as **<u>Exhibit 1</u>**, dismissing the Debtor's chapter 11 case, or in the alternative, (ii) an order, substantially in the form annexed hereto as **<u>Exhibit 2</u>**, modifying and lifting the automatic stay to enable the Receiver to proceed, unimpeded by the jurisdiction of this Court, with his duties under the Receiver Order, and granting Citibank such other and further relief as may be just and proper.

*[Signature on following page]*

031352 000049 19870616.9

DATED:   New York, New York
September 29, 2017

Respectfully submitted,

THOMPSON & KNIGHT LLP
*Counsel to Citibank, N.A.*

By:

/s/ Anthony F. Pirraglia
STUART GLICK
ANTHONY F. PIRRAGLIA
900 Third Avenue, 20th Floor
New York, New York  10022-4728
(212) 751-3001

031352 000049 19870616.9