**WHITE & WOLNERMAN, PLLC**
David Y. Wolnerman, Esq.
950 Third Ave., 11th Floor
New York, New York 10022
Phone: (212) 308-0603

*Proposed Attorneys for the Debtor and Debtor in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------X
In re:

**NOSSON R. SKLAR,**

                        **Debtor.**

-------------------------------------------------X

                        **Chapter 11**
                        Case No. 17-12394 (SCC)

**DEBTOR'S OMNIBUS OBJECTION TO (I) CITIBANK'S MOTION FOR ENTRY OF AN ORDER DISMISSING THE DEBTOR'S CHAPTER 11 CASE OR IN THE ALTERNATIVE GRANTING RELIEF FROM THE AUTOMATIC STAY; AND (II) MOTION OF ITRIA VENURES LLC FOR RELIEF FROM THE AUTOMATIC STAY**

    Nosson R. Sklar, the above-captioned debtor and debtor in possession (the "Debtor"), by his proposed attorneys, White & Wolnerman, PLLC, hereby submits this Objection (the "Objection") to the motions (collectively, the "Motion") of Citibank, N.A. ("Citibank") for entry of an order dismissing the Debtor's Chapter 11 case or, in the alternative, granting relief from the automatic stay, and of Itria Ventures LLC ("Itria") for relief from the automatic stay. In support of this Objection, the Debtor respectfully submits as follows:

### Preliminary Statement

    1.    The Debtor commenced the instant Chapter 11 proceeding on August 29, 2017 as a *pro se* debtor. Although the Debtor proceeded as best he could as a layman, he quickly realized that he was categorically incapable of administering this estate without the assistance of Chapter 11 counsel. Having now retained Chapter 11 counsel, the continued imposition of the

automatic stay imposed by Section 362 of the Bankruptcy Code is needed (and warranted) to allow the Debtor to "right the ship" and restructure his financial affairs. As discussed herein, the Debtor should be afforded the protections of the Bankruptcy Code to pursue an effective reorganization.

2. The Debtor is an individual and the 100% member of various related limited liability companies that primarily operate in the early intervention, home health care, rehabilitation center, outpatient treatment industry within the health services sector.[1] One of these limited liability companies, The Comprehensive Center, LLC, leases space to Grand Street Medicine & Rehabilitation PC, an entity that offers physical therapy services. The Comprehensive Center, LLC and Grand Street Medicine & Rehabilitation PC are also parties to a management agreement pursuant to which The Comprehensive Center, LLC provides management services to Grand Street Medicine & Rehabilitation PC. The Debtor is also the director of Comprehensive Kids Development School, a non-for-profit entity that provided early childhood special education pursuant to a charter issued by the New York Department of Education.

3. In order to fund certain operating expenses of the limited liability companies, a line of credit was obtained from Citibank and receivable-based financing was obtained from Itria, each of which was personally guaranteed by the Debtor.

4. Historically, the majority of the Debtor's income was earned through services rendered by the various limited liability companies pursuant to referrals from Comprehensive Kids Development School. Although Comprehensive Kids Development School maintains its

---

[1] The names of these limited liability companies are as follows: (i) The Comprehensive Center, LLC; (ii) NY's Comprehensive Homecare, LLC; (iii) Comprehensive Staffing Solutions, LLC; (iv) Comprehensive Evaluation, PLLC; (v) Comprehensive Certified Homecare of California, LLC; and (vi) Comprehensive Staffing Solutions of California, LLC.

2

charter, it lost its contract with the New York Department of Education and ceased operations as a public institution. The loss of this contract had a domino effect on the Debtor's limited liability companies, thereby impairing their ability to services the Citibank and Itria loans. Litigation between the parties ensued and, due in part to the Debtor's lack of income to fund such litigations, judgments were issued against the Debtor (and his limited liability companies) and in favor of Citibank and Itria. At the same time, the Debtor fell into arrears on the maintenance charges on his cooperative apartments (the "Coops") where he resides.

5. The Debtor, however, submits that he indeed had the wherewithal to satisfy, at least in part, his personal obligations from his share of the inheritance of his late mother's estate – approximately $240,000. Due to competing claims against this inheritance among the Debtor, Citibank and Itria, the administrators of the estate did not turn over the inheritance funds to the Debtor. As discussed below, the Debtor submits that these funds are property of this estate and should be immediately turned over to the estate. First and foremost, the Debtor intends to use these funds to provide adequate protection to Itria to ensure there is no diminution in the value of Itria's security interest in the Coops.

6. On the other hand, Citibank readily concedes that its secured claim against the Debtor's Coops is junior to approximately $2.8 million in claims secured by the Debtor's Coops. Citibank also readily concedes that the Debtor's Coops are worth no more than $2.5 million.[2] In short, Citibank is woefully out the money with respect to the Debtor's cooperative apartments and, as such, is essentially an unsecured creditor and not entitled to adequate protection.

7. In order to effectuate a financial reorganization, the Debtor is proceeding on a number of fronts. First, the Debtor is in the process of procuring a debtor-in-possession loan that

---

[2] The Debtor submits that the value of the Coops is less than $2.5 million and is in the process of obtaining an appraisal of same.

3

will pay off Itria's first secured lien on the Coops and either (i) pay off Itria's second secured lien or (ii) cure existing defaults on Itria's second secured lien and backstop the payments to Itria going forward. Second, the Debtor is in talks with a counterparty to transfer the home care license of Comprehensive Certified Homecare of California, LLC. The Debtor estimates that this estate would receive approximately $300,000 from this transaction, which would fund the costs of administration and provide plan funding. Third, additional funding (approximately $240,000) should be infused into this estate from the Debtor's share of his mother's inheritance. Fourth, the Debtor is currently in talks with a potential partner to use the charter granted to Comprehensive Kids Development School to open a private school. This would breathe new life into the Debtor's various limited liability companies and return them to historic profitability. The income realized by the Debtor would be used to fund plan payments going forward. Finally, the Debtor is currently in talks with respect to two additional joint ventures – one in respect of The Comprehensive Center, LLC for early intervention services, and a second in respect of NY's Comprehensive Homecare, LLC for geriatric home care services. Again, the income realized by the Debtor would be used to fund plan payments going forward.

8.      For these reasons and as more fully discussed herein, this Chapter 11 case has every indicia of a likelihood of an effective reorganization. Accordingly, the Debtor submits that the automatic stay should continue in effect to afford the Debtor the breathing room to which he is statutorily entitled in order to pursue a financial reorganization. As further discussed herein, this case should not now be dismissed at this early stage (Chapter 11 counsel having just been retained) nor should this Court abstain from presiding over this case.

**Argument**

A.  **Citibank is Not Entitled to Adequate Protection Payments**

9. As an initial matter, Citibank seeks relief from the automatic stay imposed by Section 362 of the Bankruptcy Code on account of the Debtor's purported inability to adequately protect Citibank's collateral. Contrary to Citibank's contention, however, the interest in property sought to be protected under Section 361 of the Bankruptcy Code is the value of the secured creditor's collateral during the interim period between the filing of the petition and confirmation of a plan of reorganization. *See United Savings Assoc. of Texas v. Timbers of Inwood Forest Assoc., Ltd.*, 484 U.S. 365 (1988); *In re 499 W. Warren Street Associates, Ltd. Partnership*, 142 B.R. 53, 57 (Bankr. N.D.N.Y. 1992).

10. Here, by Citibank's own admission, the value of Citibank's collateral interest in the Coops is zero. In Citibank's opinion, the Coops are "worth not more than $2,500,000". Citibank Motion, ¶3. Citibank's approximate $1.6 million "secured" judgment is junior to (i) approximately $44,000 in unpaid maintenance; (ii) a first priority lien of Consumers Federal Credit Union (since purchased by Itria) in the approximate amount of $1.1 million; and (iii) Itria's approximate $1.685 million secured judgment. Citibank Motion, ¶¶ 37, 39, and FN 7. In short, Citibank's "secured" claim against the Coops is, in reality, totally unsecured and, therefore, Citibank is not entitled to adequate protection of such interest.

11. Accordingly, Citibank's request to lift the automatic stay on account of the Debtor's purported inability to adequately protect its interest in the Coops should be denied.

**B.       The Debtor Has a Source of Funds to Adequately Protect Itria's Secured Interests**

12.     Unlike Citibank, Itria's claim against the estate is secured to the extent of the value of the Coops.[3]  In this regard, Itria submits that its secured interests in the Coops are not being adequately protected as the Debtor is not paying his maintenance obligations.  To ensure that the value of Itria's collateral is not diminished, the Debtor intends to satisfy its post-petition maintenance obligations with the inheritance money he is entitled to from his mother's estate.  Upon information and belief, the Debtor's share of the inheritance is approximately $240,000.

13.     The Debtor's share of this inheritance is being held by his sisters, acting in their capacity as administrators of their late mother's estate.  Upon information and belief, the administrators did not release these funds to the Debtor pre-petition due to competing claims against same.  Accordingly, it appears the Debtor will have to move before this Court for entry of a turnover order before the funds are released to the Debtor.

14.     The Debtor submits that these funds are not encumbered by Itria, Citibank or any other party and represent a source of income the Debtor may use to fund the administration of this case and a Chapter 11 plan.  Other than issuing a restraining notice upon the administrators, *see* Exhibit A, Citibank has taken no action to perfect any security interest it may have in the inheritance and, therefore, Citibank's claim against the estate is not secured by these funds.  Although Itria obtained a writ of execution and on June 30, 2017 subsequently levied upon the inheritance, *see* Exhibit B, these funds have not been paid over to Itria.  Accordingly, pursuant to C.P.L.R. §5232(a) such levy is now void.  Even assuming that Itria thereby perfected its security

---

[3] The value of the Coops is the subject of disagreement.  From the bankruptcy filings, it appears the Coops are worth between $2 million and $2.5 million.  The Debtor will be obtaining an official appraisal of the Coops, at which point the extent of Itria's secured interest in the Coops can be determined.

6

interest in the inheritance, which it did not, such perfection would be avoidable as a preference pursuant to Section 547 of the Bankruptcy Code.

15. The inheritance funds are more than sufficient to provide Itria with the adequate protection payments it requests. The Debtor submits that lifting the automatic stay on the grounds that Itria is not being adequately protected is unwarranted – the Debtor should not be penalized for his sisters' refusal to consensually turnover the funds to which he is rightfully entitled.

C. **The Coops are Necessary for an Effective Reorganization**

16. Both Citibank and Itria seek relief from the automatic stay under Section 362(d)(2) of the Bankruptcy Code on the grounds that the Coops are purportedly not necessary for an effective reorganization. In this regard, both Citibank and Itria adopt a somewhat myopic view of the applicable standard – either that the mere fact that the Coops are indispensable to the Debtor's survival is insufficient or that when determining whether a non-business chapter 11 debtor's residence is necessary for an effective reorganization the key factor is whether suitable alternative housing exists.

17. Here, the Debtor proposes to use the Coops to secure the funds needed to refinance Itria's secured interests in the Coops. The Debtor is currently in the process of negotiating the terms of this refinancing loan and will shortly be seeking bankruptcy court approval of same pursuant to Section 364 of the Bankruptcy Code. The Debtor's very ability to effectively reorganize hinges on his ability to retain the Coops and procure such refinancing loan.

18. As noted in *Timbers*, in opposing a motion to lift the automatic stay under Section 362(d)(2), "there must be 'a reasonable possibility of a successful reorganization within a

7

reasonable time"'. *United Savings Assoc. of Texas v. Timbers of Inwood Forest Assoc., Ltd.*, 484 U.S. 365, 375-76 (1988). Here, the Debtor is in the process of procuring a debtor-in-possession loan that will pay off Itria's first secured lien on the Coops and either (i) pay off Itria's second secured lien or (ii) cure existing defaults on Itria's second secured lien and backstop the payments to Itria going forward. Second, the Debtor is in talks with a counterparty to transfer the home care license of Comprehensive Certified Homecare of California, LLC. The Debtor estimates that this estate would receive approximately $300,000 from this transaction, which would fund the costs of administration and provide plan funding. Third, additional funding (approximately $240,000) should be infused into this estate from the Debtor's share of his mother's inheritance. Fourth, the Debtor is currently in talks with a potential partner to use the charter granted to Comprehensive Kids Development School to open a private school. This would breathe new life into the Debtor's various limited liability companies and return them to historic profitability. The income realized by the Debtor would be used to fund plan payments going forward. Finally, the Debtor is currently in talks with respect to two additional joint ventures – one in respect of The Comprehensive Center, LLC for early intervention services, and a second in respect of NY's Comprehensive Homecare, LLC for geriatric home care services. Again, the income realized by the Debtor would be used to fund plan payments going forward.

19.     The Debtor submits that an effective reorganization is more than realistically possible and, therefore, relief from the automatic stay pursuant to Section 362(d)(2) should be denied at this early stage of the case.

**D.     This Case Should Not Be Dismissed as a Bad-Faith Filing**

20.     It is well settled that the burden of establishing cause for dismissal rests squarely on the party seeking such relief. *In re Van Eck*, 425 B.R. 54 (Bankr. D. Conn. 2010); *In re D &*

*F Meat Corp.,* 68 B.R. 39, 40 (Bankr. S.D.N.Y. 1986). "The standard in this Circuit is that a bankruptcy petition will be dismissed if *both* objective futility of the reorganization process *and* subjective bad faith in filing the petition are found." *See In re Kingston Square Assocs.,* 214 B.R. 713, 725 (Bankr. S.D.N.Y. 1997); *In re Gen. Growth Properties, Inc.*, 409 BR 43, 56 (Bankr. S.D.N.Y. 2009). Here, Citibank only alleges the elements of the subjective bad-faith prong, but fails to even allege objective futility. Accordingly, Citibank's motion to dismiss should be denied for the simple reason that Citibank failed to meet its burden of proof. *See In re Rubin Family Irrevocable Stock Trust*, 2013 WL 6155606 (Bankr. E.D.N.Y. Nov. 21, 2013) (even if the Court agreed with the arguments concerning the debtors' subjective bad faith, it could not dismiss these cases, because objective futility is not apparent).

21.     The Debtor further submits that Citibank failed to meet its burden of proof with respect to the subjective bad-faith prong as well. Courts do not engage in a mechanical counting exercise in analyzing court-developed "bad-faith" factors. Rather, the analysis revolves around a fundamental issue – whether the facts of the case suggest that chapter 11 relief is warranted. *In re Century/ML Cable Venture,* 294 B.R. 9, 35 (Bankr. S.D.N.Y. 2003). As noted by the court in *In re 68 West 127 Street, LLC*, 285 B.R. 838, 844 (Bankr. S.D.N.Y. 2002): "Lists of such factors, then, ultimately do no more than assist the exercise of discretion in deciding when a debtor has improperly invoked the Bankruptcy Code, or is improperly hiding behind the automatic stay to speculate with the creditor's collateral, because it is not able, or not trying, to confirm a chapter 11 plan." Here, the Debtor's prospects of confirming a Chapter 11 plan appear to be high – he simply needs a little more breathing room afforded to him under the Bankruptcy Code to implement a fresh start pursuant to the provisions of the Bankruptcy Code. Based on the facts of

9

this case and the fact that the Debtor has only recently retained Chapter 11 counsel, this breathing room should be afforded to the Debtor.

22. Here, the Debtor has multiple assets, including his Coops, his membership interests in various limited liability companies, and an interest in an inheritance. This case can hardly be considered a single asset case.

23. Moreover, and contrary to Citibank's assertions, the Debtor has considerable unsecured claims, including Citibank's own claims, in addition to secured claims.

24. Furthermore, given the disputes between the Debtor, on the one hand, and Itria, Citibank, and the administrators of the Debtor's mother's estate, this case clearly does not represent a two-party dispute.

25. The timing of the Debtor's filing evidences an intent to preserve the value of the Debtor's assets for the benefit of all creditors and parties in interest. That the Debtor filed for bankruptcy on the eve of foreclosure, does not change this fact.

26. The Debtor is an individual, so the fact that he does not have any employees is not dispositive.

27. Finally, the Debtor's right to his share of his late mother's estate provides more than sufficient cash flow to fund the administration of this estate and pay expenses. The Debtor should not be penalized because the fiduciaries of his mother's estate appear to require a turnover order from this Court (something the Debtor could not do on a *pro se* basis) before giving the Debtor what is rightfully his.

28. Based upon the totality of circumstances, Citibank has failed to carry its burden of proof on the issue of bad faith and its motion to dismiss should be denied. For the same reasons, the request to lift the automatic stay for "bad-faith" should be denied.

**E.        Abstention Pursuant to 11 U.S.C. 305 is Not Warranted**

29.    Citibank's suggestion that abstention is in the best interests of creditors and the Debtor is simply unfounded. Citibank does not explain how abstention, as opposed to a financial restructuring along the lines discussed herein, is in the best interest of the Debtor – it is not. *See, e.g., See In re Globo Communicacoes E Particpacoes S.A.*, 317 B.R. 235, 255 (S.D.N.Y. 2004) ("This test requires that both creditors and debtors benefit from the dismissal, rather than applying a simple balancing test to determine whether dismissal is appropriate"). Indeed, where a debtor itself has initiated the bankruptcy, terminating that process and forcing the debtor to settle its debts elsewhere will rarely be in the debtor's interest. *See In re Pine Lake Vil. Apartment Co.,* 16 B.R. 750, 754 (Bankr. S.D.N.Y. 1982). Nor does Citibank explain how abstention is in the best interest of all other creditors and parties in interest. In short, Citibank has failed to carry its burden of proof.

30.    Furthermore, Citibank's allegations sounding in bad faith do not support the relief requested. In this regard, Citibank conflates the standards of Sections 1112 and 305. *See In re Pine Lake Vil. Apartment Co.,* 16 B.R. 750, 754 (Bankr. S.D.N.Y. 1982) (finding that Section 305(a) should "not [be used] as a substitute for a motion to dismiss under Code §1112(b))." In fact, as discussed above, dismissal is not even warranted here under Section 1112.

31.    That a pre-petition receiver was appointed over the Coops in no way supports Citibank's request for abstention, and Citibank has cited to no authority to the contrary. In fact, pursuant to Section 543 of the Bankruptcy Code, the receiver is no longer authorized to administer or take any action in respect of the Coops. 11 U.S.C. § 543.

32.    In addition, because abstention under Section 305 is not appealable to the courts of appeal or the Supreme Court, it should be treated as an "extraordinary remedy" and should be

11

used sparingly. *See In re Globo Communicacoes E Particpacoes S.A.*, 317 B.R. 235, 255 (S.D.N.Y. 2004); *In re Pine Lake Vil. Apartment Co.,* 16 B.R. at 754.

33. Accordingly, Citibank's motion for abstention should be denied.

## CONCLUSION

**WHEREFORE**, for the reasons discussed herein, Defendant respectfully requests that the Court deny the Motions, and grant the Debtor such other and further relief as it deems just and proper.

Dated: New York, New York
November 16, 2017

WHITE & WOLNERMAN, PLLC

By: /s/ David Y. Wolnerman
David Y. Wolnerman, Esq.
950 Third Ave., 11th Floor
New York, New York 10022
dwolnerman@wwlawgroup.com
Phone: (212) 308-0667

*Proposed Attorneys for the Debtor and Debtor in Possession*